CARTER, Judge.
This is a suit to rescind the sale of a motor home. Plaintiff, Gwen Dearing, sued Coleman Oldsmobile, Inc., d/b/a Coleman R.V. Center (dealer), Chrysler Corporation (manufacturer of the chassis of the motor home), and Midas International Corporation (manufacturer of the “box” portion of the motor home). The trial court granted Chrysler’s motion for a directed verdict, dismissing Chrysler from the suit. The court rescinded the sale and held Coleman and Midas liable, in solido, for the amounts paid by plaintiff on the purchase price subject to a credit for the value of plaintiff’s use of the vehicle and for attorney fees. All third-party demands were dismissed.
On March 20, 1979, Ms. Dearing purchased a Midas 200-1 Mini Home from Coleman. The purchase price was $16,-803.75 and the total cost after adding all finance charges was $22,602.72. As part of the transaction, Ms. Dearing delivered to Coleman a 1978 Chevrolet Van as a trade-in and received a credit of $7,500 toward the cost of the motor home. The trial court found that plaintiff accepted delivery on March 23, 1979 and that her problems began on that day. Plaintiff returned the vehicle to Coleman on numerous occasions. On five different occasions repair orders were written up.
On November 7, 1979, plaintiff issued a demand letter to Coleman in which she listed 34 alleged defects:
1. Generator does not work.
2. Muffler is falling off and rusting out.
3. Exterior trim has blown off.
4. Formica is coming off table.
5. Carpet on driver’s side is not secured to floor and flops over gas pedal.
6. Passenger door jams.
7. Arm rest is torn.
8. Dash air conditioner leaks.
9. Cigarette lighter knob does not match rest of knobs on dash.
10. Dash air conditioner loover is broken.
11. Gas tank will not hold capacity.
12. Outside mirrors will not stay in place.
13. Cushion seam behind passenger seat is split.
14. Stearing makes grinding noise.
15. Fresh water tank will not fill.
16. Transmission slips out of gear.
17. Window screens will not stay in place.
18. Fumes from gas tank infumigate cab.
19. Hub caps will not stay in place.
20. Front end will not stay aligned, front right tire is badly worn as result thereof.
21. Storage door on rear of vehicle will not lock properly.
22. Hydrolic jack will not work.
23. There is a leak in roof over front at driver’s seat.
24. There is a leak over cabinets in rear of motor home.
25. Batteries will not maintain charge.
26. Alternator does not work.
27. Water pump does not work properly.
28. Refrigerator lining is cracked.
29. Refrigerator shelf is missing.
30. Refrigerator is coming out of the wall.
31. Curtains are stained and torn. (Since purchase)
32. Curtain rod is pulling out of the wall.
33. Side step light is broken.
34. Windshield wipers and fan belts have been dry rotted since purchase.
As evidenced by the work orders and testimony, many of plaintiff’s problems, such as problems starting the vehicle, problems with the generator, and problems with the numerous leaks, continued to reoccur. Plaintiff finally filed suit in January, 1980.
Without discussing each alleged defect, the trial court found that some of the com *22 plaints involved problems which were only minor adjustments or minor misunderstandings between plaintiff and Coleman personnel. The court found, however, that many defects were present in the motor home at the time of sale from Coleman to the plaintiff and that some were caused by improper design and poor manufacture, thus placing responsibility for those defects on Midas. The court further found the following:
“(T)he actions of Coleman between the time of delivery of the motor home from Midas to Coleman and the date on which the plaintiff sought to rescind this sale either caused or enhanced many of the defects. This was due to (1) a complete failure of Coleman to do routine maintenance on this unit from the time of purchase from the manufacturer to the time of the sale to the plaintiff; (2) complete failure of Coleman to service the unit prior to the delivery to the plaintiff; (3) failure of Coleman to perform repairs or extremely poor repair work by Coleman when the unit was returned by the plaintiff for service or repair; and (4) complete failure of Coleman to advise or instruct the plaintiff on proper use and maintenance of the unit. These findings taken together show that both Midas and Coleman are responsible for the defects in this motor home.”
Defendants Coleman and Midas have appealed. Coleman urges two specifications of error, that the trial court erred in its finding that plaintiff was entitled to a complete rescission of the sale as against Coleman and that the court erred in refusing to grant Coleman’s third party demand for indemnity against Midas. Midas urges that the trial court erred in granting a complete rescission of the sale as against Midas and that the trial court erred in refusing to grant its third-party demand for indemnity against Coleman. Plaintiff answered asking that judgment of the trial court be affirmed at appellants’ costs. Because of the similarity of defendants’ specifications of error, they will be discussed together.

Rescission of the sale

Defendants argue first that plaintiff is not entitled to rescission of the sale for any alleged apparent defects observed during her inspection prior to purchase. These include: the rusting mirrors, the stained and torn curtains, the missing cigarette lighter, the missing shelf from the refrigerator, the loose formica table top, the non-operating interior lights of the vehicle, the missing keys to the vehicle, and the missing owner’s manual.
La.Civ.Code art. 2520.
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
La.Civ.Code art. 2521.
“Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.”
Two cases are cited by defendants in which plaintiffs were aware of the defects prior to purchase. In Millin v. Dawson, 387 So.2d 1213 (La.App. 1st Cir.1980), the court found there could be no action for reduction in price when the defects complained of are apparent defects. (An action for reduction in price is subject to the same rules as an •action for redhibition). The court found that the dealer had, however, bound himself contractually to repair the damaged items listed on the purchase agreement. In Hawkins v. Camper Village, Inc., 404 So.2d 508 (La.App. 1st Cir.1981), a judgment granting rescission to plaintiff was reversed and the case was remanded to the trial court for further evidence on the issue of reduction. One of the reasons for reversal was plaintiff’s admitted knowledge of the majority of the defects, which the court said were not redhibitory vices. The facts of the present case are somewhat different.
In the present case, the plaintiff admits that some of the defects complained of were noticed prior to purchase. However, *23 there were many vices not discoverable by simple inspection which form the basis of this action. The trial court found that it was not any particular defect which required rescission but the combined effect of the defects and the poor or non-existent service. The fact that some defects were apparent cannot defeat plaintiff’s claim.
Defendants’ second argument is that plaintiff is not entitled to redhibition for defects caused by misuse of the vehicle or defects not present at the time of the sale. Defendants argue first that plaintiff performed no maintenance on the vehicle, such as changing the oil, lubricating the unit, cleaning the filter, changing spark plugs, checking the generator, nor periodic inspections of the roof. This argument is clearly without merit. Five work orders filled out by Coleman were submitted by plaintiff into evidence. The first work order was written just a week after purchase and the next three within two months of purchase. The type of maintenance suggested by defendants should not be required so soon after purchase. Also, there is little, if any, relation between the problems complained of and the maintenance suggested.
Defendants also suggest that Ms. Dearing’s children, ages 7 and 10, could “plausibly” have caused some of the problems. The trial court, however, found that Coleman and Midas were responsible for the defects in the motor home. We must conclude that he did not find the children responsible. His factual finding will not be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The jurisprudence is clear that the buyer may prove the existence of redhibitory defects not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of the sale. Rey v. Cuccia, 298 So.2d 840 (La.1974). The court in Rey also said, at page 843,
“If the defect appears within three days following the sale, it is presumed to have existed before the sale. Article 2537. However, even where the defect appears more than three days after the sale (as here, when it appeared on the second day of use, but ten days after the sale), if it appears soon after the thing is put into use, a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale. Andries v. Nelson, 46 So.2d 333 (La.App. 1st Cir.1950); Standard Motor Car Co. v. St. Amant [18 La.App. 298] 134 So. 279 (1st Cir.1931). See, for similar principle, when a constructed thing fails shortly after being put into use. Joyner v. Aetna Casualty & Surety Co., 259 La. 660, 251 So.2d 166 (1971).”
The trial court found that although some of the complaints involved minor adjustments or minor misunderstandings, many involved defects which were present in the motor home at the time of sale. The trial court did not find and the record does not reveal any other explanations or intervening causes for the defects. The work orders and plaintiff’s testimony show that the vices began to be obvious shortly after purchase. In the absence of other explanation, we conclude that the vices must have existed at the time of sale.
Defendants’ third argument is that plaintiff’s remedy, if any, should have been a reduction in the purchase price based on the authority found in La.Civ.Code art. 2543.[1] Midas cites several cases in which courts allowed only a reduction of the purchase price where evidence disclosed only a partial failure of consideration. Newman v. Dixie Sales and Service, 387 So.2d 1333 (La.App. 1st Cir.1980); Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1st Cir.1975); Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4th Cir.1974), writ refused 303 So.2d 186.
*24 In the Wade case, the main problem was the failure of the seller to correct a water leak around the windshield. The court found that the overall circumstances, especially the nature of the defect and the long period of extensive usage of the vehicle, by the buyer, supported the conclusion that the defect only diminished the utility of the vehicle and thus constituted only a partial failure of consideration. Reduction of purchase price was granted rather than a rescission. In Newman, this court affirmed the trial court’s decision to grant reduction of the price rather than rescission of sale when the only complaint involved a defective transmission (other alleged defects had been corrected). In Menville, however, numerous defects were present. The court found that the defects, though numerous, did not render the automobile useless. The court then said, at page 860,
“While it is a closer question as to whether the defects rendered the car so imperfect that a reasonable buyer would not have purchased it had he known of the defects, the overall circumstances support the trial judge’s resolution, especially the nature of the defects and the long period of extensive usage prior to the rescission demand."
The test of whether a defect is a redhibitory one is whether the defect renders the thing sold either absolutely useless, or its use is so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the defect. La.Civ.Code art. 2520. The motor home in this case was for much of the time plaintiff’s only mode of transportation. The testimony supports plaintiff’s claim that on many occasions she was not able to rely on the motor home to get her to and from her place of business and around town. She desired a self-contained unit for camping purposes, but was often unable to start the generator. Additionally, some of the defects (the insecure side mirrors for instance) could have and/or did place her in a hazardous situation. The use of the motor home became so inconvenient and imperfect that it must be presumed that Ms. Dearing would not have purchased it had she known of its vices.
The trial court said that it was not any particular defect which prompted its judgment but the combined effect of the defects and the poor or non-existent service which calls for rescission. This court has considered the effect of multiple vices before. In Bagwell v. Coleman Oldsmobile, Inc., 391 So.2d 1260 (La.App. 1st Cir.1980), this court found that the numerous defects, cumulatively at least, were such that they rendered the vehicle so imperfect that the plaintiff would not have bought it had he known of the defects.
Each case must be decided on its own facts. The court in Newman, at page 1335, said:
“The ultimate question of the existence of a redhibitory vice and the amount awarded in quanti minoris are questions of fact for the trial judge which should not be disturbed in the absence of manifest error or abuse of the wide discretion afforded him. Clinkscales v. Superior Pontiac-GMC, Inc., 365 So.2d 895 (La. App. 4th Cir.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).”
We find no manifest error in the trial judge’s conclusion that the combined effect of the defects was redhibitory. Indemnification
Midas and Coleman filed third-party claims against each other which were denied. Midas bases its claim for indemnification on the assumption that all of the defects alleged by the plaintiff were easily repairable, replaceable, or correctable by Coleman’s service department. Coleman urges that absent proof that most of the defects were caused by Coleman’s efforts, Coleman is entitled to indemnification from Midas under La.Civ.Code art.. 2531.
The trial judge found that some of the defects were caused by both poor manufacture and by improper design, thus establishing fault by Midas. He did not enumerate what those particular defects were. He could have been referring to the insecure outside mirrors, the problem with the refrigerator coming out of the wall, the prob *25 lem with the generator, the exterior trim blowing off, the numerous leaks, or the problems with the curtains, to name a few possibilities. His finding of fault on the part of Midas will not be reversed absent manifest error.
That fault having been established, Midas is in no position to claim indemnification from Coleman.
“When the sale is annulled for a redhi-bitory defect resulting from the original manufacturer, the purchaser can recover the pecuniary loss resulting from the unusable thing sold from the manufacturer as well as the seller.” Rey v. Cuccia, 298 So.2d 840 (La.1974).
In support of its argument, two cases are cited by Midas which deny the dealer indemnification from the manufacturer. Bagwell v. Coleman Oldsmobile, Inc., supra; Daigle v. Robinson Bros., Inc., 368 So.2d 186 (La.App. 1st Cir.1979). In neither ease was the defect found to be caused by the manufacturer. In Perrin v. Read Imports, Inc., 359 So.2d 738 (La.App. 4th Cir.1978), the dealer was allowed indemnification from the manufacturer when it was shown that defects were more probably than not caused by the manufacturer.
These cases do not stand for the proposition that the manufacturer has a right of indemnification when the dealer fails or refuses to repair. They are relevant, however, to Coleman’s claim against Midas.
La.Civ.Code art. 2531 reads as follows:
“The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.”
“In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect.”
The second paragraph of Article 2531 grants the dealer a right of action in redhibition against the manufacturer. This right, however, may not be enforced when the dealer is at fault in creating defects or in failing to cure easily remedial defects. Evangeline, Etc. v. Coleman Oldsmobile, Inc., 402 So.2d 208 (La.App. 1st Cir.1981); Perrin v. Read Imports, Inc., supra.
The trial court found, upon ample evidence and testimony and after a visual inspection of the motor home, defects in design and manufacture on the part of Midas, and failure on the part of Coleman to do routine maintenance and service, and failure to perform or to perform poorly essential repairs. Because of these findings, neither defendant is entitled to indemnification from the other.
For the above reasons, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.

. La.Civ.Code art. 2543 reads as follows:
“The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action.
But in a redhibitory suit, the judge may decree merely a reduction of the price.”