442 So.2d 570 (1983)
RED ARROW SALES, INC.
v.
DIXIE MOTORS, INC.
No. 83-CA-0123.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*571 Robert A. Anderson, Jr., Covington, for plaintiff-appellant.
Nita R. Gorrell, Hammond, for defendant-appellee.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
The trial court denied plaintiff's main demand and granted defendant's reconventional demand for the rescission of a sale on the basis of redhibition and awarded damages and attorney fees. We affirm in part and reverse in part.
On November 18, 1980, Red Arrow Sales, Inc., hereinafter Red Arrow, sold to Dixie Motors, Inc., hereinafter Dixie, a used Worthington 5-brush car wash for $7,540.89. Under the terms of the contract the price included delivery and installation fees but did not include the cost of running utilities (air, water, and electrical lines) or the cost of pouring the slab or erecting the building to house the car wash.
Dan Durham, owner and general manager of Dixie, hired general contractor Carl Wainwright to prepare the slab according to the site plan prepared and provided by Cliff Walker, owner and general manager of Red Arrow. The site plan was a detailed sketch specifying the dimensions of the building to be erected and the thickness, texture and slope, or grade, of the slab to be prepared. Walker hired Roy Simoneaux to deliver and install the car wash on December 11. Because of delays in construction of the slab and the building, Simoneaux was unable to install the car wash until February 18, 1981.
On that date, the construction of the building and the slab were completed but the utilities were still unconnected. Simoneaux anchored the tracks to the slab, but when he placed the car wash on top, he noticed that the slope of the slab was too great for the machine to roll evenly on the tracks. He testified that the car wash, weighing over 4,000 pounds, must roll on level tracks bolted flush to the slab. In an attempt to remedy the problem, he welded a flat iron bar to the vertical side of the tracks.
On the 21st of February, he returned with Charlie Schellbach, the manufacturer of the car wash, to complete the installation and inspect the machine for operation. Schellbach discovered several problems with the machine in addition to the problems with track. One of the brushes had a faulty electric motor which caused the brush to spin at irregular intervals. One *572 of the pneumatic air brushes would stick preventing a side arm from disengaging. Four rubber bumpers needed replacing. Several of the air and water pipes were leaking. He also suggested that Simoneaux replace the wheels with new larger ones to conform with the new higher tracks and to compensate for the high slope of the slab.
Consequently, Simoneaux returned again on the 26th of February to replace the faulty electric motor. He discovered a bad transformer, caused by low voltage, and replaced that on March 14. He had had to replace a second bad motor on March 7. He installed the new wheels on March 23. Cliff Walker accompanied him that day to clean the brushes and remove some undercoating that Durham had complained of. Durham also complained that the car wash would not wash compact cars, so Walker ordered a larger top brush, called a monster brush, on May 9. Simoneaux replaced that brush on May 15.
Because of these repeated repairs and modifications, Durham became completely dissatisfied with the car wash. He testified that although the car wash was used, Cliff Walker represented that the car wash was "like new," being only two years old. He said that when he first saw the car wash he was shocked by its outward appearance, being dirty, rusty, worn with use, with undercoating in the brushes. He said he expected the machine to be able to wash all the cars that his dealership retailed, but that it never successfully washed one car. According to Tony Marullo, Durham's former manager, the one time Dixie ever used the car wash it streaked the car paint and left undercoating on the tires. Accordingly, when Simoneaux returned on June 9 to widen the guide rails, Durham refused to let him do any more work on the car wash.
On June 16, Durham tendered the car wash to Cliff Walker and offered him $1,000.00 to take it back. Walker refused and on behalf of Red Arrow filed suit for recovery of the price, damages and attorney fees. Dixie answered and reconvened for the rescission of the sale, its own damages and attorney fees.
The trial court found that the car wash contained several redhibitory vices: It was rusty at seams and in corners and physically unsightly. One of the side arms would not disengage. Several parts, including two defective electric motors and a faulty transformer, had to be replaced. The brushes were worn and coated with undercoating. The track had to be modified; and the wheels, bumpers, shafts, and bearings had to be replaced. The court further found that "the purpose of the car wash was to clean every vehicle owned by Dixie Motors from large vans to small compacts," and that the only time the employees of Dixie operated the car wash it scratched a car.
The court also found that because it was necessary to overhaul, remake and assemble the equipment, Red Arrow fabricated the car wash, and was therefore a manufacturer within the meaning of LSA-C.C. art. 2545.
Based upon these findings, the trial court denied Red Arrow's main demands and awarded Dixie $2,330.00 damages in storage costs and $1,500.00 attorney fees. From this judgment, Red Arrow appeals, arguing essentially that the evidence is insufficient to support the trial court's findings of either redhibitory defects justifying a rescission of the sale[*] or a fabrication rendering Red Arrow liable as a manufacturer for attorney fees.
Redhibition is the avoidance of a sale on account of some vice or defect in a thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he *573 known of the vice. LSA-C.C. art. 2520. However, the plaintiff need not prove the precise or underlying cause or defect, so long as he shows that the thing contained a defect and that the defect existed at the time of the sale. Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660 (La.1975).
Moreover, multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired. Even latent defects appearing well after the sale can be a basis for redhibition if they are not the normal result of ordinary use. Davidson v. New Roads Motor Co., Inc., 385 So.2d 319 (La.App. 1st Cir.1980).
Although the warranty against redhibitory defects in sales of used equipment is not as extensive as in sales of new equipment, it does require that the equipment operate reasonably well for a reasonable period of time. Bamber Contractors, Inc. v. Henderson Bros., Inc., 392 So.2d 92 (La.App. 1st Cir.1980).
Finally, the existence of a redhibitory defect is a question of fact which cannot be disturbed unless the record as a whole establishes that the finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Ball v. Ford Motor Company, 407 So.2d 777 (La.App. 1st Cir. 1981).
The trial court was not clearly wrong in finding that the car wash contained redhibitory defects. From the first day of installation, the car wash demonstrated a history of mechanical and electrical problems. Although Cliff Walker and Charlie Schellbach both testified at trial that the car wash operated "reasonably well" on several occasions, Dan Durham and Tony Marullo testified that the car wash never successfully washed one car. According to Marullo, "[b]ecause the brush turned and some water squirts out, do you call that working? I define working, washing a car."
On the basis of a reasonable evaluation of credibility, the trial court found for the defendant. We can only do likewise. Even a used car wash that does not successfully wash a single car because of an aggregate of operational failures requiring repeated repairs is clearly defective within the meaning of art. 2320.
However, the trial court was clearly wrong in finding that Red Arrow had fabricated the car wash.
If a seller substantially rebuilds or modifies the thing sold prior to the time of sale or in accordance with the terms of the sales agreement, he may be liable as a manufacturer for his "fabrication" of the product. See for example, Spillers v. Montgomery Ward & Co., Inc., 294 So.2d 803 (La.1974) (A manufacturing firm was found to be a "manufacturer" for customizing a used truck, in accordance with the terms of the sales agreement, by adding to it a "tag axle" assembly, which it had fabricated out of spare parts lying around its junk yard. The Supreme Court said that the addition of the tag axle assembly was a substantial modification of the truck.); Capitol City Leasing Corp. v. Hill, 394 So.2d 1264 (La.App. 1st Cir.1981) (This court said that the seller of certain log skidders was a "manufacturer" because he "rebuilt the machines with all new parts prior to the time of sale and lease." Id. at 1268.) Since the manufacturer is presumed to know the vices and defects of his product, he is liable for damages and attorney fees under LSA-C.C. art. 2545.
In the present case, there is no evidence in the record indicating that Red Arrow substantially modified or rebuilt the car wash either prior to the sale or in accordance with the terms of the contract. Red Arrow is quite clearly a retailer who undertook in good faith after the sale to remedy the defects in what turned out to be a "lemon" of a car wash.
As a retailer, Red Arrow's liability in redhibition is found in LSA-C.C. art. 2531, which provides in pertinent part:
The seller who knew not the vices of the thing is only bound to repair, remedy *574 or correct the vices ... or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
The trial court's award of $2,330.00 for the cost of storage is a reasonable expense incurred for the preservation of the thing sold. However, Red Arrow is not liable under art. 2531 for attorney fees.
For the foregoing reasons, the award of $1,500.00 attorney fees is reversed. In all other respects, the judgment is affirmed. Cost of these proceedings are to be divided equally between the parties.
REVERSED IN PART AND AFFIRMED IN PART AND RENDERED.
NOTES
[*] Red Arrow argues that all of the problems with the car wash resulted from the improper slope of the slab, not from any defects in the machine and that the trial court erred in finding Red Arrow had assumed the additional obligation of constructing the slab. Since we find redhibitory defects in the car wash itself, we need not decide whether the trial court's ruling was correct on this question.