446 So.2d 536 (1984)
Larry N. DICKERSON, Plaintiff-Appellant,
v.
BEGNAUD MOTORS, INC. and General Motors Corp., Defendants-Appellees.
No. 83-479.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
Writ Denied April 23, 1984.
*538 Charles C. Dickerson, Carthage, Tex., C. Clifton Dickerson, III, Lockport, for plaintiff-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Keith M. Borne, Lafayette, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
GUIDRY, Judge.
This redhibitory action arises out of the purchase by Larry N. Dickerson from Begnaud Motors (hereafter Begnaud) of a 1980 Oldsmobile Toronado, manufactured by General Motors Corporation (hereafter GM). Mr. Dickerson brought this suit on November 25, 1980 against Begnaud and GM alleging that a problem in the steering mechanism of the vehicle constituted a redhibitory defect. In his suit, he seeks rescission, damages and attorney's fees. By amended petition, plaintiff also asserts a cause of action against G.M. under 15 U.S. C.A. 2310(d) for breach of warranty. After trial, the court gave judgment in favor of both defendants, dismissing plaintiff's suit with prejudice. Plaintiff appeals. Defendants neither appeal nor answer the appeal.

FACTS
On April 11, 1980, Mr. Dickerson, after a test drive, purchased the Toronado from Begnaud. At that time, it was agreed that certain apparent or known defects would be corrected at a later date. Subsequently, plaintiff discovered a latent problem with the steering mechanism which manifested itself on right hand turns. The problem eventually was determined to be a manufacturing defect in the worm gear. It is not disputed that this defect existed at the time of purchase.
On the day after the sale, plaintiff drove the new Toronado to Carthage, Texas, a trip of approximately 300 miles. On May 13, 1980, plaintiff brought the vehicle to Begnaud's for the formerly agreed upon minor repairs. It was disputed at trial whether or not he, at this time, also informed Begnaud of the problem with the steering mechanism. On June 4, 1980, plaintiff again brought the car to Begnaud's for certain repairs. It was also disputed whether or not plaintiff, at that time, informed Begnaud's of the problem with the steering mechanism. On July 17, 1980, plaintiff returned the Toronado to Begnaud's service department. This time the major complaint was the steering mechanism. The mileage on the car at that time was 2,087 miles. On August 1, 1980, plaintiff was provided with a 1979 Delta 88 as a replacement car which he used until August 15, 1980. On August 5, 1980, plaintiff sent a letter to GM and Begnaud advising them that if the problem with the steering mechanism was not remedied in 15 days, he would demand rescission. Begnaud contacted plaintiff on August 11, 1980 to advise him that it was believed that the defect had been remedied. On August 13, 1980, plaintiff went to Begnaud's to test drive the Toronado but did not do so when Begnaud's refused to sign a hold harmless agreement prepared by plaintiff. Plaintiff returned on August 18, 1980 and requested that Robert Bernard, Sr., Begnaud's general manager, drive the Toronado with plaintiff riding along as a passenger. Mr. Bernard did so and then acknowledged that the problem had not been repaired. That same day, Mr. Bernard called Michael Conner, the Oldsmobile district service manager, explaining the problem and asking for assistance. Mr. Conner responded that he would be in within a week to examine the car. He then called Mr. Dickerson and so advised him. By letter dated August 22, 1980, Mr. Dickerson, through counsel, made formal demand on Begnaud for rescission. *539 The return receipt on the letter was dated August 27, 1980. By letter dated September 3, 1980, Begnaud, through counsel, advised plaintiff that the vehicle was repaired and ready for delivery. This suit was filed on November 25, 1980. At the time of trial, the vehicle remained in the custody of Begnaud.

LIABILITY OF BEGNAUD IN REDHIBITION
The statutory basis for the action in redhibition is Civil Code Art. 2520, which provides:
§ 1Of the Vices of the Thing Sold, Which Give Occasion for the Redhibitory Action
Art. 2520. Redhibition, definition. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
To prevail in an action for redhibition, the vendee must establish that the defect existed at the time of purchase, but was neither known or apparent to him. He must also prove that the thing sold is absolutely useless for its intended purpose or that its use is so inconvenient that it must be supposed that the vendee would not have made the purchase had he known of the defect.
Furthermore, when a seller is in good faith, he must be given an opportunity to repair the thing before a redhibitory action can be brought, whereas a bad faith seller has no corresponding right. LSA-C.C. Arts. 2531 and 2545; Jordan v. LeBlanc and Broussard Ford, Inc., 332 So.2d 534 (La.App. 3rd Cir.1976); Associates Financial Services Co. v. Ryan, 382 So.2d 215 (La.App. 3rd Cir.1980).
The trial judge, in written reasons for judgment, determined that the vehicle in question contained a latent defect at the time of its purchase, which determination is fully supported by the record. However, the trial judge also determined that the defect was not major and was not such a defect as would support rescission of the sale. The trial court finally concluded that the defect was fully corrected on or about August 18, 1980, prior to the time this suit was filed. For the reasons which follow, we fully agree with these conclusions.
Plaintiff made no showing of bad faith on the part of Begnaud, whose primary duty therefore is only to repair, remedy or correct the vice as provided in LSA-C.C. Art. 2531. This article also provides a secondary duty to restore the purchase price and reimburse expenses when the good faith seller is unable to repair, remedy or correct the vice. Article 2531 fails to set forth the terms and conditions of the good faith vendor's right to repair, leaving open the question: When does the vendor's right to repair end and the vendee's right to rescission begin?
We conclude that the statute envisions that a reasonable opportunity be afforded to the vendor to repair the defect. As we stated in Jordan v. LeBlanc and Broussard Ford, Inc., supra:
"Until the legislature provides specific rules concerning the terms and conditions of the right to repair, there is no alternative in the judiciary but to decide each case on its peculiar circumstances with due regard being given to the competing interests of the consuming public and the retailers and manufacturers."
Jordan v. LeBlanc and Broussard Ford, Inc., supra, at 538.
Plaintiff improperly relies on Reech v. Coco, 223 La. 346, 65 So.2d 790 (1953) and Cain v. Rapides Dodge, Inc., 207 So.2d 918 (La.App. 3rd Cir.1968) writ refused, 252 La. 163, 210 So.2d 51 (1968), for the proposition that the repair of an automobile subsequent to a tender does not affect a plaintiff's right to rescission. These cases predate the amendment to LSA-C.C. Art. 2531 which, as now amended, allows a good faith vendor the opportunity to repair. Under the new article, any tender by plaintiff for rescission before a reasonable opportunity to repair has been afforded the good *540 faith vendor is premature as plaintiff's right to return of the purchase price does not arise until such an opportunity has been afforded his vendor. The question then becomes whether the repair of the defect is made within a reasonable time under the circumstances, balancing the interests of the buyer against those of the seller, and not whether the repair is made subsequent to a tender by plaintiff for rescission.
The question of what constitutes a reasonable opportunity is a question for the finder of fact. It is suggested in a law review article appearing in 49 TLR 484 at 488 that the following factors are relevant to this inquiry:
"In protecting the buyer's interests, such considerations as whether or not the buyer has been furnished with a substitute for the defective item while it is being repaired30 and the extent to which the buyer's lifestyle is disrupted by the unavailability of the thing, are important. With respect to the interest of the seller, the nature of the defect, i.e., how difficult it is to remedy, and the number of unsuccessful attempts to repair are relevant factors." (footnote omitted)
In the present case, the trial judge, in written reasons for judgment, found that the defect was corrected within a reasonable time. We find no manifest error in this conclusion. As noted by the trial judge, "Begnaud offered to lend plaintiff substitute transportation, and in fact plaintiff did use such transportation for some of the time that the vehicle was being repaired." Plaintiff returned the substitute vehicle of his own volition prior to completion of the repairs by Begnaud.
The record also supports the trial judge's conclusion that the defect was slight. Although the defect once diagnosed was easily remedied, the evidence indicates the problem was difficult to diagnose and could only be done by a trial and error method. Under the above circumstances, Begnaud, as a good faith seller, fulfilled its obligation to repair the defect within a reasonable time.

LIABILITY OF GM
GM, as the manufacturer of the automobile, is conclusively presumed to know of the defect. Rey v. Cuccia, 298 So.2d 840 (La.1974). Thus, GM is considered a bad faith seller and falls within the ambit of the following Civil Code provision:
"The seller who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages."
LSA-C.C. Art. 2545.
As aforestated, Article 2545 provides no corresponding right of repair, as found in Article 2531, governing the liability of the good faith seller. Tender and opportunity to repair is unnecessary as a prerequisite to a redhibition action against a manufacturer. Prince v. Paretti Pontiac Co., 281 So.2d 112 (La.1973); Burns v. Lamar-Lane Chevrolet, Inc., 354 So.2d 620 (La.App. 1st Cir.1977); Associates Financial Services Co. v. Ryan, supra.
As aforestated, plaintiff proved, and the trial judge concluded, that the vehicle in question contained a latent defect at the time of its purchase. However, the trial judge further determined that the defect was not major and would not support a rescission of the sale.
In Prince v. Paretti, supra, which was partially overruled by the amendment to Civil Code Art. 2531, but remains the law as it pertains to bad faith sellers, the court stated:
"The notion that easily repaired defects do not support redhibition is not found in our statutory law. C.C. 2520, et seq. Neither Domat nor Pothier mentioned `ease of repair' as being relevant to the determination of whether a defect will support redhibition. Domat wrote rather that a judge must "discern by the quality of the defects whether the sale ought to be dissolved."6

*541 Thus, to prevail in an action for redhibition, a purchaser need not prove that the alleged defect is difficult to repair.7 The purchaser need only prove a defect in the thing sold which "renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." C.C. 2520."
7 See, J.B. Beaird Co., Inc. v. Burris Bros., Ltd., 216 La. 655, 44 So.2d 693 (1949); Crawford v. Abbott Automobile Co., Ltd., 157 La. 59, 101 So. 871 (1924). In certain cases, "ease of repair" might be relevant to a judge's decision to decree merely a reduction in price, rather than redhibition. C.C. 2541 and 2543.
Prince, supra, at 116; other footnotes omitted.
Thus, although ease of repair is not of itself a defense against redhibition, it is germane to the issue of whether the sale ought to be dissolved.
In the present case, the trial judge concluded that the quality of the defect was not such as to entitle the vendee to rescission. The ultimate question of the existence of a redhibitory vice is a question of fact for the trial judge which should not be disturbed in the absence of manifest error or abuse of the wide discretion afforded him. Clinkscales v. Superior Pontiac-GMC, Inc., 365 So.2d 895 (La.App. 4th Cir.1978); Newman v. Dixie Sales and Services, 387 So.2d 1333 (La.App. 1st Cir. 1980).
In a redhibitory suit, the judge has the discretion to decree merely a reduction of the price where the defect in the thing sold is such as to merely diminish the value. LSA-C.C. Arts. 2541 and 2543.
In the present case, although the plaintiff had no obligation to tender the vehicle to GM for repair, the court found that the vehicle was in fact repaired within a reasonable time following the sale.
Theoretically the proper measure for reduction in price in a redhibitory action is the difference between the sale price and the price a reasonable buyer and seller would have agreed upon had they known of the defect, but the buyer can recover the cost of having the defect repaired elsewhere. Wiltz v. Dixie Auto Sales, Inc., 315 So.2d 811 (La.App. 3rd Cir.1975).
In the instant case, the repairs were made free of charge and plaintiff was offered substitute transportation while the vehicle was being repaired. The trial judge found that the plaintiff failed to prove a sufficient amount of inconvenience for him to be entitled to an award for such. Furthermore, the plaintiff failed to show with reasonable certainty facts disclosing the amount of the reduction to which he is entitled. Galt v. Herndon, 16 La.App. 239, 133 So. 800 (2d Cir.1931); Ehrlich v. Roby Motors Co., 166 La. 557, 117 So. 590 (1928); Harding v. Ed Taussig Edsel Motors, Inc., 130 So.2d 517 (La.App. 3rd Cir.1961).
Under these circumstances, we are unable to find manifest error in the trial judge's failure to award a reduction in the purchase price as against GM.
Plaintiff also asserted a cause of action under the Magnuson-Moss Warranty Act, 15 U.S.C.A. § 2301 et seq. Plaintiff introduced into the record a written warranty provided by GM. The act requires that a warrantor must remedy without charge and within a reasonable time a consumer product that is defective, malfunctions or fails to conform with the warranty. As aforestated, we find no error in the trial judge's determination that the defect was repaired within a reasonable time. Thus, plaintiff is not entitled to any recovery under the Magnuson-Moss Warranty Act.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs on appeal are assessed to plaintiff, Larry N. Dickerson.
AFFIRMED.