470 So.2d 484 (1985)
Allen J. DUMOND, Jr. and Jane L. Dumond
v.
HOUMA TOYOTA, INC.-A.M.C. JEEP, INC., et al.
No. CA 84 0439.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*486 Rudolph D. Hargis, Jr., McMahon, McCollam & Hargis, Houma, for plaintiffs and appellees Allen J. Dumond, Jr. & Jane L. Dumond.
Michael V. Clegg, Macy, Adcock, Kemp, Dupree, McIntyre, Shows & Clegg, Baton Rouge, for defendant appellee and third party plaintiff Houma Toyota, Inc. -A.M.C. Jeep, Inc.
B. Richard Moore, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for defendant and appellant American Motors Sales Corp.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
This is a redhibitory action against the intermediate seller (dealer) and manufacturer of a 1981 Renault 18i. The dealer filed a third party demand against the manufacturer for indemnity and attorney fees. Judgment was rendered rescinding the sale of the vehicle and awarding plaintiffs restitution from the defendants in solido in the amounts of $9,500 for the return of the purchase price, $1,640.34 for finance charges paid by plaintiffs, and $505.60 for incidental expenses, subject to a credit of $2,110.92 for use of the car. The manufacturer was ordered to pay an attorney fee of $4,402.35 to the plaintiffs. Judgment was rendered in favor of the third party plaintiff dealer for full indemnification and a $3,500 attorney fee from the third party defendant manufacturer. The manufacturer took this suspensive appeal.

FACTS
On March 10, 1981, Allen and Jane Dumond purchased a 1981 Renault 18i from Houma Toyota, Inc. (Toyota). In April and May of 1981, the Dumonds experienced a number of minor problems with the automobilethe clock stopped working when the lights were turned on, the door jambs needed alignment, the radio was broken, the air-conditioning vent was pulled out, the manual control for the outside rearview mirror was broken, the brakes were squeaking and the battery had to be replaced. All of these problems were repaired by Toyota except the squeaking brakes. The Dumonds were without their car for approximately three days for these repairs.
In August of 1981, the automobile was brought to Toyota again because the transmission was slipping and there was a rattle in the dash. The car was in the shop for two days, but, according to Allen Dumond, the problem with the transmission was not repaired.
On October 19, 1981, the car had to be towed in to Toyota after it lost all of its power steering, brakes, and lights while Allen Dumond was driving it at night.[1] The problem was diagnosed as a burned battery cable, which was replaced.
Allen and Jane Dumond testified the next problem with the car occurred in September *487 or October of 1981 when the car overheated.[2] Jane Dumond testified this overheating occurred while she was waiting at the drive-up window line at Wendy's. The problem was diagnosed as an inoperative temperature gauge, which was put on order. The Dumonds also experienced problems with the car's heater in October of 1981.
Overheating occurred again in February of 1982. Allen Dumond testified the car overheated three times in February of 1982. Claim No. R269049, dated February 4, 1982, indicates the car was brought in for overheating and the problem was diagnosed as a defective sending (sensor) unit.[3] This part had to be placed on order. An attempt was made by Tom O'Dell, one of the mechanics at Toyota to bypass the defective sensor unit by wiring the fans directly so they were automatically engaged when the ignition switch was turned on. The car again overheated and was brought back to Toyota on February 15, 1982, where it remained for three months.
The Dumonds filed suit against Toyota and American Motors Sales Corporation (AMSC) on April 16, 1982. On April 28, 1982, Toyota informed the Dumonds their car was repaired. The Dumonds picked their car up on June 4, 1982.
On October 14, 1982, Larry Stains, AMSC's district service manager, inspected the Dumond's vehicle. After driving the car five to six miles, Stains noted the car began to overheat. He diagnosed the problem as a defective sensor unit in the radiator. He also noted the air-conditioning was not working because of an obstruction in the system, there was a rattle in the dash, there was "normal" valve clatter in the engine and the heater was not working properly.
On the date of trial, December 6, 1983, the trial judge, accompanied by the attorneys for the parties and Larry Stains, test drove the automobile. Before the test drive, Stains checked the oil level and added coolant to the radiator. After traveling only two to three miles, the car began to overheat. The air-conditioning switch was turned on to activate the cooling fans,[4] but the car continued to overheat. After allowing the car to cool down, Stains again added coolant to the radiator. After traveling only a few miles, the car began to overheat again. Stains testified the sensor unit is defective.

REDHIBITION
Appellant-manufacturer argues this is not a proper case for redhibition because the repairs necessary to make the car operational are not very difficult and would cost only $800. Appellant further argues the trial judge apparently accepted this fact because in his oral reasons for judgment he stated: "... I admit that the remedy of the problem may not be that serious...". Appellant also argues the trial court abused its discretion in ordering a rescission rather than a reduction in purchase price.
Redhibition is the avoidance of a sale because of a vice or defect in a thing sold which renders it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed the buyer would not have purchased it had he known of the vice. La.C.C. art. 2520; Red Arrow Sales, Inc. v. Dixie Motors, Inc., 442 So.2d 570 (La.App. 1st Cir.1983). The plaintiff need not prove the precise or underlying cause or defect, so long as he shows the thing contained a defect and the defect existed at the time of the sale. Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660 (La.1975).
In Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.1973), which was partially overruled by the amendment to *488 Civil Code Article 2531, but remains the law as to bad faith sellers, the Court stated:
The notion that easily repaired defects do not support redhibition is not found in our statutory law. C.C. 2520, et seq. Neither Domat nor Pothier mentioned "ease of repair" as being relevant to the determination of whether a defect will support redhibition. Domat wrote rather that a judge must "discern by the quality of the defects whether the sale ought to be dissolved."

Thus, to prevail in an action for redhibition, a purchaser need not prove that the alleged defect is difficult to repair.7 The purchaser need only prove a defect in the thing sold which "renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." C.C. 2520.
1 See, J.B. Beaird Co., Inc. v. Burris Bros., Ltd., 216 La. 655, 44 So.2d 693 (1949); Crawford v. Abbott Automobile Co., Ltd., 157 La. 59, 101 So. 871 (1924). In certain cases, "ease of repair" might be relevant to a judge's decision to decree merely a reduction in price, rather than redhibition. C.C. 2541 and 2543.
[Emphasis added, footnote 6 omitted]. [Prince, 281 So.2d at 116].
Thus, although ease of repair is not of itself a defense against redhibition, it is relevant to the issue of whether the sale should be rescinded or a reduction of the purchase price ordered. Dickerson v. Begnaud Motors, Inc., 446 So.2d 536 (La.App. 3rd Cir.1984), writ denied, 449 So.2d 1349 (La.1984).
In a redhibitory suit, the judge has the discretion to order a reduction of the price instead of a rescission of the sale where the defect in the thing sold is such as to merely diminish the value. La.C.C. arts. 2541 and 2543; Abshire v. W.D.L. Investments, Inc., 428 So.2d 1145 (La.App. 1st Cir.1983), writ denied, 433 So.2d 161 (La.1983); Dickerson, supra. The ultimate question of the existence of a redhibitory vice is a question of fact which should not be disturbed in the absence of manifest error. Red Arrow Sales, 442 So.2d at 573; Dickerson, 446 So.2d at 541.
The testimony at trial clearly established there was a recurring problem with the car overheating. AMSC's expert witness, Larry Stains, testified the sensor unit which activates the cooling fans is defective. On the date of trial, when the trial judge test drove the car, it overheated twice after only traveling a few miles. In his oral reasons for judgment, the trial judge stated:
The Court obviously was quite impressed by that in that the vehicle had been in the shop on several occasions, the last time for at least over a monthin fact, more than that, maybe 2 months, before for this same problem and the problem had supposedly been corrected, and here we are the day of trial and the thing is still overheating. And although there were a lot of minor defects with the vehicle, the defect with the cooling system is such that had the purchasers known that they would have such serious problems with the cooling systemand although I admit that the remedy of the problem may not be that serious, the fact of the business is that they could not use their vehicle. Had the purchasers known that they would have that much problems with the cooling system, they would not have purchased the vehicle.
There is no manifest error in the trial court's factual findings, and the trial judge did not abuse his discretion in ordering a rescission of the sale rather than a reduction in the purchase price. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

INDEMNIFICATION
AMSC contends the trial court erred in granting Toyota indemnification because Toyota failed to correct an easily cured defect and failed to call on AMSC for assistance.
Louisiana Civil Code Article 2531 provides, in pertinent part, as follows:

*489 In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect.
This law grants the dealer (seller) a right of action against the manufacturer. This right, however, may not be enforced when the dealer is at fault in creating defects or in failing to cure easily remediable defects. Cefalu v. Leon Pickford Chevrolet, Inc., 428 So.2d 1063 (La.App. 1st Cir.1983); Dearing v. Coleman Oldsmobile, Inc., 423 So.2d 19 (La.App. 1st Cir.1982). In Guyon v. Camper Village, Inc., 428 So.2d 1014 (La.App. 1st Cir.1983), writ denied, 431 So.2d 1 (La.1983), this court held the dealer's negligence must be a "substantial factor" in aggravating or maintaining the defect before it would constitute concurrent fault sufficient to bar recovery under the second paragraph of La.C.C. art. 2531.
This is not such a case. Although Toyota performed an unauthorized repair by attempting to bypass the defective sensor unit, there is no indication this attempted repair created, contributed to, or worsened the already defective sensor unit. This was merely an attempt to make the car usable until a new sensor unit could be obtained.
Toyota was not at fault in failing to repair an easily remediable defect. Kevin Chaisson, a mechanic at Toyota, testified he diagnosed the problem as a defective sensor unit and placed that part on order. Tom O'Dell testified that he replaced the defective sensor unit in the vehicle. However, in October of 1982 and at the time of trial, the vehicle was found to have a defective sensor unit and was still overheating. This indicates that either the second sensor unit was also defective or that the problem is more than just a defective sensor unit. In either event, this is not the fault of Toyota.
Apparently, the trial judge accepted the testimony of Toyota's mechanics and found as a fact Toyota was not at fault in either creating defects or failing to repair easily remediable defects. These factual findings by the trial judge are not clearly wrong. Arceneaux, supra.

ATTORNEY FEES
AMSC contends the attorney fees awarded to the Dumonds and Toyota are excessive.
La.C.C. art. 2545 provides:
The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.
A manufacturer is presumed to know the vices of the things he sells and is liable to the buyer for an attorney fee if he loses a redhibitory action. Baham v. Community Motors, Inc., 428 So.2d 867 (La.App. 1st Cir.1983). An intermediate seller (dealer) is also entitled to an attorney fee from the manufacturer. Cox v. Lanier Business Products, Inc., 423 So.2d 690 (La.App. 1st Cir.1982), writ denied, 429 So.2d 129 (La. 1983).
The trial court has discretion to award a reasonable attorney fee. Disciplinary Rule 2-106, Louisiana Code of Professional Responsibility, provides, in pertinent part, as follows:
Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.

*490 (4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
See, Anselmo v. Chrysler Corporation, 414 So.2d 872 (La.App. 4th Cir.1982). Cf. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979). An attorney fee award by a trial court will not be modified by an appellate court unless there has been an abuse of discretion. Aetna Finance Company of Baton Rouge v. Perkins, 448 So.2d 121 (La.App. 1st Cir.1984). After reviewing the record and the relevant facts contained therein, we conclude that, although the attorney fee awards are generous, they are not an abuse of discretion.
In brief, the Dumonds and Toyota request additional attorney fees for this appeal. The record does not reflect that these appellees either appealed or answered the appeal. Accordingly, they are not entitled to the additional fees. La.C.C.P. art. 2133; Buratt v. Capital City Press, Inc., 459 So.2d 1268 (La.App. 1st Cir.1984), writ denied, 462 So.2d 654 (La.1985); Celestin v. Fireman's Fund Insurance Company, 430 So.2d 1263 (La.App. 1st Cir. 1983).

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. AMSC is cast for the cost of this appeal.
AFFIRMED.
NOTES
[1] Allen Dumond testified this loss of power occurred in August of 1981; however, Alton Stinson, Toyota's Service Manager at that time, testified this occurred on October 19, 1981. Claim No. R269044 also indicates October 19, 1981, is the correct date.
[2] The parties disagree on the exact number of times the car overheated and the dates on which it overheated. Toyota claims the first notice it had of overheating was on February 4, 1982.
[3] The sending (or sensor) unit activates the engine's cooling fans once the engine's temperature has reached a certain level.
[4] This is a method of activating the cooling fans by overriding the defective sensor unit.