# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1652


JENNY SLAYTON

VERSUS

JOHN N. DAVIS, D/B/A HUB CITY MOTORS


**********

APPEAL FROM THE
ALEXANDRIA CITY COURT
PARISH OF RAPIDES, NO. 96,355
HONORABLE RICHARD E. STARLING, JR., CITY COURT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Glenn B. Gremillion, Judges.

**AFFIRMED.**

Gremillion, J., dissents in part and assigns reasons.

**Michael H. Davis**
**Davis & Saybe, LLP**
**Post Office Box 12180**
**Alexandria, LA   71315-2180**
**(318) 445-3621**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **John N. Davis**

**William M. Ford**
**Post Office Box 12424**
**Alexandria, LA   71315-2424**
**(318) 442-8899**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Jenny Slayton**

AMY, Judge.

Due to alleged defects in a vehicle she purchased, the plaintiff filed suit against the defendant, advancing theories of redhibition and unfair trade practices. The trial court found in favor of the plaintiff, finding the presence of redhibitory defects and the existence of unfair trade practices. The defendant was ordered to return the plaintiff's down payment and associated expenses. General damages, lost wages, and attorney's fees were also awarded. The defendant appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The plaintiff, Jenny Slayton, entered into a number of transactions for the purchase of a vehicle from the defendant's Alexandria, Louisiana used car lot. The record indicates that the plaintiff initially chose a Mercury Sable from the car lot, but returned the vehicle, preferring a 1992 Buick Skylark. An Invoice and Bill of Sale, dated February 15, 2002, lists the sale price of the Skylark as $2200. The plaintiff provided an $800 down payment. According to the plaintiff, she returned the car immediately as it began to make "clinking" noises and was "running hot" before she arrived home. The plaintiff testified that when she reported the problem to Lisa Davis, the defendant's wife, at the car lot, she was told that there had been problems with the car and that she could return it and choose another vehicle.

The plaintiff returned to the lot and chose a 1994 Pontiac Grand Am. Although the original Invoice and Bill of Sale for this purchase is not included in the record, the plaintiff testified that she thought that the purchase price was approximately $300 more than the Buick Skylark. Her original $800 down payment was transferred to the purchase of the Grand Am. The plaintiff explained that the defendant kept the car to fix an oil leak. While completing this repair, additional damage was caused, resulting

in the need for further repair. The plaintiff agreed to pay for one-half of the cost of the additional repairs. A new Invoice and Bill of Sale was completed on March 22, 2002, reflecting the inclusion of the repairs in the sale price of the vehicle, now $3,499. However, the plaintiff was not able to drive the car after March 22, as it continued to have problems. The vehicle was again retained for repair.

A new Invoice and Bill of Sale was completed on April 25, 2002, listing the sale price as $3,899. The higher sale price reflected the inclusion of one-half of the repair costs. The down payment was once again transferred to this purchase price. A financing agreement for the balance was completed and is contained in the record. The plaintiff explained that she left the lot in the vehicle that day, but was later left stranded on the side of the Interstate. As is evidenced by an April 29, 2002 receipt from a towing service, the plaintiff had to have the vehicle towed from the road on that date. According to the plaintiff, once she was at the towing service, she was able to drive the vehicle home. However, she was unable to use the vehicle afterwards. She stated that the defendant picked up the vehicle from her home a few days later. The plaintiff testified that on May 8, 2002, the defendant explained that he had to hire a new mechanic to perform work on the car and that he inquired as to whether she knew of someone to work on the car. The defendant denies that there was a problem with the vehicle.

The plaintiff explained that at the end of May, she went to Hub City Motors to get the vehicle, but that they would not allow her to have it. The defendant explains that the car was not returned to her because she had not made a payment on the vehicle or the repairs. She testified that she was ordered off the lot. The record indicates that the plaintiff signed a "Waiver, Consent and Notice" on May 28, 2002,

2

releasing the vehicle to Hub City Motors. The plaintiff denied that her down payment or costs associated with the cost of the vehicle were returned to her.

The plaintiff filed a petition instituting this matter in June 2002, seeking rescission of the sale due to the presence of redhibitory defects and alleging unfair trade practices. The trial court found in favor of the plaintiff, finding the presence of redhibitory defects sufficient to rescind the sale and the presence of unfair trade practices, particularly finding a wrongful seizure between May 15 and May 28, 2002. The trial court found that this wrongful seizure led to the repossession which was without the plaintiff's willful consent. The trial court ordered the defendant to return the $800 down payment, towing costs of $50, insurance costs of $84, a $60 payment made on the account, and a tax and license fee of $40.[1] Furthermore, $1,442 was awarded in wages lost due to problems with the car. General damages in the amount of $7,500 were awarded, as were attorney's fees in the amount of $3,500. The defendant appeals, assigning the following as error, in their brief to this court:

1. The Trial Judge erred in finding that the Plaintiff/Appellee had proved a redhibitory defect in the vehicle.

2. The Trial Judge erred in finding that the Defendant did not have the right to retain possession of the vehicle.

3. The Trial Judge erred in finding that the Appellant/Defendant had resorted to self help resulting in a wrongful seizure.

4. The Trial Judge erred in finding that the Appellee was entitled to attorney fees.

5. The Trial Judge erred in awarding lost income to the Appellee.

6. The Trial Judge erred in awarding general damages of $7,500.00.

---

[1] The record indicates that the title of the car was never put in the plaintiff's name.

**Discussion**

*Redhibition*

The defendant first contests the trial court's determination that the plaintiff proved the presence of redhibitory defects and that rescission of the sale was appropriate. The defendant argues that the trial court's reasons for ruling indicate that it considered the car's problems encountered during time of the initial purchase and at the time that the second Invoice and Bill of Sale was completed. The defendant points to the principles of novation, arguing that the Invoice and Bill of Sale of April 25, 2002, is all that should be considered. He asserts in his brief to this court that: "Prior to that date, repairs had been made to the vehicle, she accepted the repairs, agreed to pay one-half of the repairs, and entered into a new Bill of Sale and Financing Agreement." The defendant contends that the plaintiff's testimony, alone, as to the inability to operate the vehicle after April 25th, was insufficient to establish the presence of redhibitory defects.

A warranty against redhibitory defects is provided by La.Civ.Code art. 2520, which indicates that:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

In finding the presence of a redhibitory defect, the trial court explained:

4

The court further finds there was a redhibitory defect when the vehicle was returned to Davis in April of 2002. The court believes Mrs. Slayton[']s testimony that the vehicle was totally disabled when it left her on the side of the road on or about April 29, 2002. There is a presumption of redhibition if the defect manifests itself within three days. Even though the vehicle may have become inoperable on the fourth day, the court can take into account all of the circumstantial evidence to determine if a redhibitory defect exists at the time of sale. Rosenthal v. Clearview Dodge and Sales, Inc., 464 So.2d 797 (La. App. 5 Cir. 1985); Dumond v. Houma Toyota, Inc. AMC Jeep 470 So.2d 484 (La. App. 1st Cir. 1985). The court totally disregards the testimony of the defendant and his expert regarding the vehicle[']s condition after April 25, 2002.

The defendant[']s expert, J.W. White, who testified that the vehicle was not defective in April 2002, nor at the time of trial, was not credible for several reasons. First of all he was a convicted felon. Secondly, he was an employee of Mr. Davis during April and May of 2002. Lastly he testified that at the time of trial, the vehicle had to be jump started for him to test it. There was no testimony of any reason the vehicle would become inoperable, other than as a result of a defect, between April 25, 2002 and the time of trial. Mr. Davis testified that the vehicle was in fine working order in May of 2002 as well as at the time of trial. If this is true and Mr. Davis felt he had legal possession of the vehicle, it would seem that the vehicle would have easily sold between May 2002 and May 2004. Mr. Davis was in the business of selling used vehicles. This is especially true if the vehicle was in good condition as indicated in Mr. Davis' testimony. At the very least it would seem that Mr. Davis or someone with his permission would have driven the vehicle. However, if the vehicle was sitting long enough for the battery to be drained, it would seem that the vehicle could not be driven, or some other defect caused it to require more work by Mr. White other than just jump starting the vehicle.

Accordingly the court finds both vehicles purchased by Mrs. Slayton possessed redhibitory defects at the time they were purchased by Mrs. Slayton.

On appeal, a trial court's determination as to the existence of a redhibitory defect is reviewed for manifest error. *Miller v. Ford Motor Co.*, 01-1299 (La.App. 3 Cir. 2/6/02), 815 So.2d 997. Our review of the record reveals no such error.

As the trial court explained, the plaintiff testified that after she retrieved the vehicle on April 25, 2002, she soon began to again experience problems. The trial

court was free to accept this version of events and discount that of the defendant and mechanic J.W. White who both explained that the car needed no further repair and that it was in working order as of the time of trial. Furthermore, a receipt from a towing service reveals a $50 charge from April 29, 2002. This receipt supports the plaintiff's testimony that the car required towing after it left her stranded on the side of the road. She explained that after the car was towed to the towing service, she was able to drive it home, but that she was no longer able to use the car for transportation. Furthermore, it supports the trial court's reference to the defect becoming apparent within four days of the plaintiff's acquisition of the car.

The trial court's determination that the vehicle contained a redhibitory defect so as to require rescission of the sale is supported by the record.[2] Contrary to the defendant's assertion, any consideration of the vehicle's failure to satisfactorily operate after its initial purchase was not inappropriate.

*Repairman's Privilege*

The defendant also contends that the trial court erred in finding a wrongful seizure when the car was held between May 15th and May 28th. The defendant asserts that a lien pursuant to La.R.S. 9:4501 was in place due to the earlier work

---

[2] The trial court observed that the Invoice and Bill of Sale contained an "as is" clause waiving warranties to the car. Noting that the clause did not contain the word "redhibition," but rather purported to waive rights of "rehabilitation," the trial court found the clause to be null and void, stating:

> It is clear that Mrs. Slayton signed what purported to be a waiver of her warranty rights when she executed a document stating the vehicle was purchased "as is" and that all rights of "rehabilitation" (sic) were waived along with any warranties. The Louisiana jurisprudence is clear that a waiver of redhibition must be clearly spelled out in a written waiver and it must be clearly brought to the purchaser's attention. Mrs. Slayton testified that this warranty waiver was not brought to her attention and the court heard no evidence to the contrary. Accordingly the court finds that the purported written warranty waiver was null and void.

The defendant has not assigned this determination as error. Therefore, we do not consider the applicability of the "as is" clause and whether the waiver was a valid one.

6

performed on the vehicle. As the plaintiff did not make a separate payment for the repairs, the defendant asserts that the retention of the vehicle was lawful pursuant to the privilege of La.R.S. 9:4501.

Louisiana Revised Statutes 9:4501[3] provides for a "Repairman's privilege on automobiles and other machinery." The trial court found no merit in the defendant's assertion that the seizure on May 15th was subject to a repairman's privilege, explaining:

> The testimony was clear that the defect which last stranded Mrs. Slayton occurred between April 25th and April 29, 2002. The court disagrees with the defendant that a materialman's lien was in effect on May 15, 2002. As counsel for defendant notes, the financing agreement executed on April 25, 2002 included 1/2 of the repair costs. This means that once Davis received the $800.00 down payment along with the promissory note on April 25, 2002, he was paid in full for the vehicle and repairs. His only action at that point would be an action for the unpaid promissory note with a security interest in the vehicle. However, he could not resort to self help to retain possession of the vehicle between

_____

[3] Louisiana Revised Statutes 9:4501 provides:

A. Any person operating a garage or other place where automobiles or other machinery are repaired, or parts therefor are made or furnished, has a privilege upon the automobile or other machinery for the amount of the cost of repairs made, parts made or furnished, and labor performed. If an estimate was given by the repairman for repairs, then in order for the amount of the privilege to exceed the amount of the estimate, the repairman must secure authorization to exceed the amount of the estimate. This privilege is effective for a period of one hundred twenty days from the last day on which materials were furnished or labor was performed if the thing affected by such privilege is removed from the place of business where such labor was performed or materials were furnished; provided that if the thing affected by such privilege remains in the place of business of the person who furnished such materials or performed such labor, such privilege continues as long as such thing remains in such place of business. For the purposes of this Section, it is immaterial where the automobile or other machinery may have been located at the time or by whom the parts may have been attached.

B. This privilege may be enforced by writ of sequestration, without the repairman having to furnish security therefor; and the exemptions from seizure granted by R.S. 13:3881 shall not be applicable to objects or property subject to this privilege for purposes of enforcing the privilege. This privilege is superior to all other privileges except for a vendor's privilege, a chattel mortgage previously recorded, a previously perfected security interest under Chapter 9 of Louisiana Commercial Laws, or against a bona fide purchaser to whom possession has been delivered and who has paid the purchase price without previous notice of the existence of the privilege.

7

May 15, 2002 and May 28, 2002. Accordingly the court finds there was a wrongful seizure for at least 13 days.

Although the record indicates that the defendant operated a used car lot and attempted to repair the vehicle sold to the plaintiff, the record is unclear on whether the business is "operating a garage or other place where automobiles or other machinery are repaired" as is required by La.R.S. 9:4501(A), or whether the repairs were procured through contract with outside individuals. Furthermore, there is no indication that the procedural requirements of the statute were met. *See* La.R.S. 9:4501(B) (wherein the legislature provides that the privilege "may be enforced by writ of sequestration"). As noted by the trial court, self-help is unavailable to the repairman. *Harper Oil Field Servs. v. Dugas*, 451 So.2d 96 (La.App. 3 Cir. 1984). *See also Quality Transmission, Inc. v. Curry*, 600 So.2d 93 (La.App. 2 Cir. 1992) (wherein the second circuit referenced La.Civ.Code art. 3217(2) and explained that, although a repairman has a right to *retain* a vehicle pursuant to La.Civ.Code art. 3217(2), there is no right to sequester a vehicle when there is a *bona fide* dispute as to the quality of the repairs). Certainly such a dispute existed in the present case. Finally, the trial court recognized that the privilege of La.R.S. 9:4501 is inapplicable as any payment due for the repair was included in the financing agreement for the car. The mechanisms for default on this obligation are separate from the remedy of La.R.S. 9:4501, as urged by the defendant. For these reasons, the trial court's determination as to wrongful seizure is supported by the record

*Wrongful Seizure*

The defendant next questions the trial court's factual finding that the vehicle was seized pursuant to self-help. He argues that the release of the vehicle signed by

the plaintiff on May 28, 2002, indicates that the plaintiff consented to the vehicle's return.

As stated above, the seizure and retention of the vehicle was not valid pursuant to La.R.S. 9:4501. Furthermore, the plaintiff testified that after Hub City Motors took the vehicle from her home, she was repeatedly denied the return of the car and was, at one time, ordered off the car lot. The "release" the defendant relies upon was not signed by the plaintiff *after* the period of retention by the defendant and does not retroactively cure the defendant's wrongful seizure.

The trial court was not manifestly erroneous in its determinations regarding wrongful seizure and self-help.

*Attorney's Fees*

The defendant contends that the award for attorney's fees was in error. He acknowledges that the Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401, *et seq.*, authorizes the award of attorney's fees. However, he asserts that the trial court found an unfair trade practice based upon wrongful seizure. As explained above, the defendant argues that there was no wrongful seizure in this case. Alternatively, he argues that a wrongful seizure of a vehicle should not be considered an unfair trade practice.

Louisiana Revised Statutes 51:1409 requires that attorney's fees be awarded in the event that actual damages are awarded for an unfair trade practice, providing:

> A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act or practice was knowingly used, after being put on notice by the director or attorney general, the court shall award three times the actual damages

9

sustained. *In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney's fees and costs.* Upon a finding by the court that an action under this section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney's fees and costs.

      B.    Upon commencement of any action brought under Subsection A of this section, the plaintiff's attorney shall mail a copy of the petition to the attorney general and director, and, upon entry of any judgment or decree in the action, shall mail a copy of such judgment or decree to the attorney general and director, but failure to conform with this subsection shall not affect any of plaintiff's rights under this section.

(Emphasis added.)[4]

In this case, the trial court found that the plaintiff's vehicle was wrongfully seized, a finding we have affirmed. Louisiana Revised Statutes 51:1401, *et seq.*, does not specifically list those things considered to be unfair trade practices. Instead, La.R.S. 51:1405 states generally that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." With this language as a starting point, the courts are to determine whether an unfair trade practice exists. *See Laurents v. Louisiana Mobile Homes, Inc.*, 96-976 (La.App. 3 Cir. 2/5/97), 689 So.2d 536; *Bryant v. Sears Consumer Fin.*

---

[4] Given the theories argued, two avenues were available for the award of attorney's fees in this case. With regard to the plaintiff's redhibition theory, La.Civ.Code art. 2545 provides:

      A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.

      A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

However, the trial court's reasons for ruling are without specific reference to a finding that the defendant knew of a defect but failed to declare it.

*Corp.*, 617 So.2d 1191 (La.App. 3 Cir.), *writ denied*, 619 So.2d 533 (La.1993). This court has previously held that a wrongful seizure of a vehicle may be correctly considered to be an unfair trade practice, subject to damages under La.R.S. 51:1409. *See Bryant*, 617 So.2d 1191. Our review of the record and the testimony regarding the defendant's actions reveals no error in a determination to award attorney's fees pursuant to La.R.S. 51:1409(A).

*Lost Wages*

The defendant next questions the trial court's award of wages lost due to the unreliability of the vehicle. He contends that the only evidence regarding the plaintiff's inability to work was her own testimony. He states in his brief to this court that: "She had no witnesses, no documentary evidence, and no tax returns."

In awarding lost wages, the trial court explained:

> The court finds that the lost wage claim of Mrs. Slayton was rather speculative due to the fact that she could not provide documentary evidence of her lost wages nor could she provide corroborating testimony. However, it is clear that Mrs. Slayton was unable to work on repeated occasions. The court finds that she missed at least 35 days of work from February 19, 2002 through the time of trial because of the problems with the vehicle purchased from Hub City. If the plaintiff could only earn minimum wage, eight hours a day, she would have a lost wage claim of $1,442.00. The court takes judicial notice that the Federal minimum wage is $5.15 per hour. The court can rely on the testimony of Plaintiff without documentation to make such an award if it is uncontradicted.

The record reveals no error in the trial court's determinations. The plaintiff testified regarding her work, explaining that she performed yard work and also worked as a painter and carpenter. She explained that she was unable to accept jobs numerous times because of the unreliability of the Grand Am and the loaner vehicles provided by the defendant. She further explained that work was also difficult due to the time she spent at Hub City Motors addressing the car situation or replacing

11

temporary tags on the loaner vehicles. Notes taken by the plaintiff, in which she memorialized the difficulties with the car, report only five days missed from work. The defendant points to this in support of his contention that the plaintiff failed to prove that she missed thirty-five days of work. However, the plaintiff explained that she did not record each of the days she missed work, stating that she had tired of doing so. The trial court was free to accept this testimony.

Although the defendant questions the adequacy of the plaintiff's evidence as she presented no corroborating testimony or evidence in support of her claim, the Louisiana Supreme Court has recently reiterated that:

> The trial court is accorded broad discretion in assessing awards for lost earnings, but there must be a factual basis in the record for the award. A plaintiff bears the burden of proving his claim for lost earnings. For purposes of determining damages, the amount of lost earnings need not be proved with mathematical certainty, but by such proof as reasonably establishes the claim, and *such proof may consist only of the plaintiff's own testimony*. Reasonable certainty is the standard.

*Driscoll v. Stucker*, 04-0589, p. 29 (La. 1/19/05), 893 So.2d 32, 53 (citations omitted) (emphasis added). *See also Jordan v. Travelers Ins. Co.*, 245 So.2d 151 (La.1971). The plaintiff's testimony and the obvious difficulties and repeated repairs to the vehicle support a determination that she was without reliable transportation and, therefore, unable to work as found by the trial court. The trial court did not err in finding that this evidence established the plaintiff's claim with reasonable certainty.

This assignment lacks merit.

*General Damages*

In his final assignment of error, the defendant argues that the award for general damages was in error. The defendant points out that general damages are generally unavailable for rescission of a sale due to redhibitory defects. He also argues that,

insofar as general damages were awarded due to the trial court's finding as to unfair trade practices, the award must be reversed as there was no wrongful seizure.

With regard to general damages, the trial court stated:

> The court also awards general damages for inconvenience, mental anguish and humiliation in the amount of $7,500.00 due to the obvious interruption of her life including lost work, numerous mechanical break downs and [being] told to leave the Hub City lot when she was entitled to possession of her vehicle[.]

"Damages for mental anguish are generally not recoverable in an action for recission of the sale of a car." *Miller*, 815 So.2d 997 (citing La.Civ.Code art. 1998[5]). *See also* La.Civ.Code art. 2545, Comment (j). However, recovery of general damages is available under the Unfair Trade Practices and Consumer Protection Law, as La.R.S. 51:1409(A) permits the recovery of "actual damages." This term has been found to include damages for mental anguish and humiliation. *Laurents*, 689 So.2d 536.

The trial court found the presence of unfair trade practices, articulating a finding of wrongful seizure. We have affirmed this determination. Given this finding and, the evidence present regarding the course of events, the difficulties with the vehicle, and further difficulties in her attempts to have the car returned after it was seized by the defendant, the $7500 award is supported by the record.

---

[5] Article 1998 provides:

> Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.

> Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

## DECREE

For the foregoing reasons, the judgment is affirmed.  All costs of this appeal are assigned to the defendant-appellant.

**AFFIRMED.**

# COURT OF APPEAL, THIRD CIRCUIT

## STATE OF LOUISIANA

## NO. 04-1652

JENNY SLAYTON

VERSUS

**JOHN N. DAVIS, D/B/A HUB CITY MOTORS**

Gremillion, Judge, dissents in part and assigns written reasons.

I agree with the majority in every respect except the award of lost wages, and I write to respectfully express my views. In my opinion, the record does not support a finding of thirty-five days of missed work by the plaintiff, nor does it support a finding that she would have worked eight hours a day had she worked. While I agree that a loss of earnings need not be proven with mathematical certainty, as set forth in *Driscoll v. Stucker*, the claim requires proof that reasonably establishes the claim. I do not believe the plaintiff reasonably established lost wages in the amount of $1,442.00. I agree with the majority that the plaintiff lost some wages, but would award a lesser amount.