CARAWAY, J.
hln this redhibition and unfair trade practices suit against the seller of designer furniture, the trial court granted judgment in favor of the furniture buyer against both the seller furniture company and its representative. Rescission, the return of *785 price, nonpecuniary damages and attorney fees -were awarded. Violations of both redhibition and unfair trade practices law were recognized. The seller appeals this ruling and its representative also contests the judgments assessment of personal liability against him. We amend the judgment and as amended, affirm.

Facts

In late 2012, Dr. Rajendra Gandhi and his wife, Vibha (“the Gandhis”), began investigating the idea of redecorating their home with custom designer furniture and draperies. In pursuit of this' plan, Dr. Gandhi, a devout Hindu, visited the Sonal Furniture and Custom Draperies, L.L.C. (“Soiial”) website. The company is located in Georgia. Dr. Gandhi became interested in the business which represented itself to be culturally and religiously like-minded with him and advertised the finest furniture and services.[1]
Impressed by what he saw on the website, Dr. Gandhi placed a phone call to Shyam Garg, a “partner” and employee of Sonal. The two arranged an appointment to meet, and Garg first visited the Gan-dhis’ home on December 24, 2012. During this visit, Garg took photographs of the home |2and indicated to the Gandhis that his interior designer, Lynn Gunter, was the best designer to be found.
During the first week of January 2013, the Gandhis and their son, Viraj, traveled to visit Sonal’s Global Mall showroom. The Gandhis and Garg walked through the showroom for 45 minutes before traveling to Garg’s show house in Macon Georgia, some 70 minutes away. Dr. Gandhi observed that the furniture in the showrooms appeared to be of very high quality and stressed to Garg his expectations that he receive high quality furniture in his home. Garg assured Dr. Gandhi that he would receive nothing but the best and guaranteed that everything would be delivered “on approval” and could be returned, if the client did not want it.
The parties agreed that Garg and Gun-ter would return to the Gandhis’ home at a later date. No written contract was ever entered into between the parties who corresponded by email and telephone. On January 10, 2013, upon Garg’s return to Shreveport with Gunter to take measurements and solicit Dr. Gandhi’s business, Dr. Gandhi gave Garg a $20,000 deposit.
During the second week of February, Dr. Gandhi was in India visiting his ill father when he received a telephone call from Garg.. Garg indicated that he and Gunter had “laid out furniture” and wanted to show it to the Gandhis. No date was set, but on February 18, 2013, Garg, Gun-ter and a four-person team arrived at the Gandhis’ home with three to four trucks, only two days after Dr. Gandhi returned from India. Dr. Gandhi was at work when he received a frantic call from his wife regarding the situation. |sHe was unable to leave his practice until noon and could not supervise the work going on in his home.
Garg’s entourage worked in the Gandhis’ home for five days. Dr. Gandhi trusted Garg to do his job and provide the best furniture. When Mrs. Gandhi pointed out scratches, Garg assured the couple that he would fix any problems or remove any unwanted items when he returned on March 31, 2012. When the work was completed, in the late evening hours of February 23, 2012, Garg presented the Gandhis with an invoice for a total amount of $210,000. The February 23rd invoice *786 showed the individual cost of each item installed in the office, foyer, dining room, family room, grand room, breakfast room, master bedroom, temple room and -tending, in addition to a bed for the Gandhis’ daughter and a grandfather clock and draperies. Dr. Gandhi had been unable to completely inspect the work and denied ever approving the work and furniture. Six items were returned at that time, however. ■ ■ •
The following morning, Garg showed-up at the house to discuss payment. Dr. Gandhi tendered a check for $150,000 (dated February 23, 2013 and deposited on February 27) from his personal account and a March 16, 2012 postdated second check from his business account in the amount of $40,000. In turn, Garg claimed to have presented the February 23rd several- page final invoice to the Gandhis. Garg claimed that he provided the Gandhis with a final invoice containing handwritten notes indicating the parties’ agreement to 100% satisfaction after 7 days’ inspection with -no questions or returns upon final payment on February 23, 2013. The Gandhis ^acknowledged receipt of an-invoice, but denied ever seeing the handwritten notes or agreeing that final payment precluded their return of unfavorable items.[2]
In the two weeks that followed, the Gan-dhis began to notice issues with the goods. Upon closer inspection, they found that “every piece was damaged,” and of a much lesser quality than whát they had seen in the showroom and expected to receive. Mrs. Ghandi called Garg on March 11 reporting that one of the breakfast chairs was broken. She called again on March 15 with complaints about a broken leg on an Italian console and black nails in the woodwork. During school break, Viraj also contacted Garg about the family’s dissatisfaction with-the work and goods. After these events, Dr. Gandhi placed a stop payment on the $40,000 check on March 18, 2013. He spoke with Garg and informed him of the situation.
By emails of March 18 and 19, 2013, Garg acknowledged the Gandhis’ complaints arid attempted tq prevent Dr. Gandhi from stopping payment on the cheek by warranting the “furniture for 25 years,” and explaining away any complaints. Garg also continued to promise his removal of anything unsatisfactory to the Gan-dhis. •
On March 21, 2013, Garg emailed Dr. Gandhi again, requesting that he be allowed to come to the house on March 31, 2013, “to fix and do whatever is necessary to make looks things good to your, satisfaction.” However, on March 28, 2013, Dr. Gandhi sent an email to Garg instructing | shim to pick up everything delivered and installed in the house and requesting a full refund by April 7,2012.
When Garg did not respond, Dr. Gandhi sent him a second email on March 31. Garg responded by email informing Dr. Gandhi that he had filed a criminal complaint against him and his wife -for stopping payment on the $40,000 check and defrauding the IRS by using corporate funds to pay for home furniture. Garg also claimed that Dr. Gandhi failed to pay for services rendered." Garg informed Dr. Gandhi that the case was going before a grand jury and he would be arrested.' He threatened to report Dr, Gandhi to the IRS and suggested that he would lose his medical license. Garg informed Dr. Gandhi that a wire transfer 'of $42,500 would *787 be sufficient for him to withdraw the criminal complaint. -.
Garg claimed that as he had promised, he had returned to' Shreveport on March 30 and 31, 2012, and uhsuccessfully made several- attempts to contact the Gandhis. When he failed to make contact with the Gandhis, however, Garg filed the criminal complaint. No further communication between, the parties occurred.
Dr. and Mrs. Gandhi instituted suit against Sonal, Garg and Gunter ón June 3,. 2013, initially seeking restitution, reason-, able damages and sums for violation of the Louisiana Racketeering Act. In October of 2013, the Gandhis’ .amended their suit to; add claims in redhibition and violations of the Louisiana Unfair Trade Practices Act (LUTPA).
A bench trial occurred on February 4 and 5, 2014. Garg, the Gandhis, Viraj and two experts testified.
^Specifically, plaintiffs’ expert Kirk Thomas, an expert in interior design, testified that he had inspected the furniture and accessories at issue in April of 2013 and based his opinion upon his personal observations. Upon -his inspection, Thomas “began to question what kind of materials the pieces were constructed of,”’ and ultimately concluded that the furnishings were “not actually intended for functional use, almost like movie set furniture,” and “would be very difficult to repair,” because they were “a product of how they were originally constructed.” In Thomas’s opinion, the furniture was not functional. He testified that much of the actual quality of the furniture was misrepresented and pointed to items that had been previously repaired. Thomas also testified to “many inconsistencies in how the draperies were fabricated and installed,” and ultimately described the workmanship as “shoddy.”
- The plaintiffs submitted into evidence 157 photographs of the furniture and draperies placed in the home by Sonal. Defendants also introduced'42 photographs into evidence showing the furniture delivered and work done by the defendants on -the Gandhi home..
In written reasons 'for judgment on the issue of liability on‘March 5, 2014,’ the trial court concluded that the Gandhis had proven liability' under redhibition- and LUTPA. Specifically, the court determined that Garg’s action amounted to a “bait and switch” tactic, misrepresented the quality of the furniture, preyed upon the cultural and religious heritage of the Gandhis and included outrageous threats, coercion and extortive-. behavior. The court also rejected Garg’s testimony and determined that he had fraudulently ^submitted the- February 23 final invoice to .the court. The liability assessment was against both Sonal and Garg.[3]
In subsequent written reasons for judgment on March 20, 2014, the pourt ruled that the Gandhis had,proven their entitlement to nonpecuniary damages under redhibition and LUTPA. With regard , to redhibition damages, ,the court determined that the, “customized furnishing of [the, Gandhis’] unique home consistent with their Indian culture and inclusive of a temple for worship, was made for the gratification of a. nonpecuniary interest,” and that Garg should have known that his failure to perform would cause extreme mental anguish, humiliation, .and inconvenience. The trial court fixed the non-pecuniary award pertaining to this ruling at $50,000. ¡
Relating to LUTPA damages, the court concluded that the “extortive conduct of Garg was outrageous and' abhorrent and the multiple violations of the unfair trade *788 practices act were shocking.” The court therefore awarded $50,000 as a nonpecuni-ary award for the mental anguish associated with the LUTPA violation.
A written judgment memorializing these rulings was entered on April 25, 2014, in favor of the Gandhis against Sonal and Garg in his individual capacity, ■ awarding the Gandhis pecuniary damages of $170,000 (for refund., of price paid) and nullification of the $40,000 obligation on the stop payment check. Additionally the court entered judgment for $100,000 in nonpecuniary damages, awarded attorney fees in the amount of $69,163.75, costs of $3,171.10 and expert witness fees of $975.
| ^Defendants moved for a new trial contesting the admissibility of the photographic evidence and on the grounds that the law and evidence failed to support recovery in either redhibition or LUTPA. When the motion for new trial was denied, this appeal by the defendants ensued.

Discussion

I.
The appellants take issue with the following observation in the trial court’s written ruling:
4. There is abundant evidence in the record to support either of the plaintiffs’ legal theories-that the transaction was one of ¾ completed sale of defective redhibitory merchandise with the right of inspection, or'that it was a conditional sale with the suspensive condition of right of view. During the period of view, Dr. and Mrs. Gandhi notified Mr. Garg that the items were unacceptable and they requested removal and a full refund. Mr. Garg breached his promises to the Gandhis as to both the quality and fitness of the items, as well as his promise to pick up the merchandise with a full refund if they were not satisfied.
Appellants take the position that the sale was conditional within the initial 7-day period upon Sonal’s delivery of the items of sale. According to their argument,- “[t]his knowledge placed upon the plaintiffs the duty to inspect the furniture at the time of delivery, and object to either the quality or-condition of the furniture.” With no objection by the Gandhis and their payments of $170,000 of the price, appellants assert that thp claims for redhibition are precluded because, after the period of inspection, redhibition protection no longer exists.
Under chapter 4 of the law of sale dealing with the perfection of the sale, Article 2460 provides as follows:
13When the buyer has reserved the view or trial of the thing, ownership is not transferred from the seller to the buyer until the latter gives his approval of the thing.
La. C.C. art. 2460.
Additionally, regarding the sale of movables, Article 2604 provides as follows:
The buyer has a right to have a reasonable opportunity to inspect the things, even after delivery, for the purpose of ascertaining whether they conform to the contract.
La. C.C. art. 2604.
These articles, cited by appellants, deal with the buyer’s right to check whether the delivered item conforms to the contract, the perfecting.of the sale, and the risk attendant to the loss of a thing as the sale is perfected. With both parties acting in good faith,, the sale may either be completed or a meeting of the minds over the thing delivered may be found lacking. Importantly, neither of these settings is addressed in the law of sale under the chapter on redhibition.
*789 On the other hand, the law of redhibition for a completed sale begins with the general provision of warranty that “[t]he seller warrants the buyer against redhibitory defects, or vice, in the thing sold.” La. C.C. art. 2520. A particular vice stemming from the actions of a bad faith seller is addressed in Article 2545, as follows:
... [A] seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees.
La. C.C. art. 2545.
ImWithout addressing in brief the above quoted provision of Article 2545, the appellants instead cite Article 2529, which provides as follows:
When the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations.
La. C.C. art. 2529.
With this provision, appellants argue that rescission of sale and return of the price is the only possible remedy for the Gandhis and that attorney fees under redhibition are not applicable.
From our review of the evidence, the ruling of the trial court and these Civil Code articles, we believe that the confusion and deception regarding the parties’ transaction do not permit a finding of an agreement for a conditional sale. The sale in this case was completed and fell directly under Article 2545 because of the seller’s bad faith and misrepresentation of the quality of the merchandise sold.
Article 2529 is not in conflict with the quoted provision of Article 2545. The representation of the seller addressed in Article 2545 is made in bad faith because the seller “knows” the item of sale will not have the quality desired by the buyer. That known deficient quality is now recognized as a redhibitory vice. Under Article 2529, the seller may have been confused regarding the exact quality of the item sold and the quality desired by the buyer. However, he does not act in bad faith in any representation of the product. Thus, the article indicates that the additional |T1remedy of attorney fees in redhibition is not provided the successful buyer for the rescission of such sale.
Apart from this legal exercise with the articles on sale, appellants do not challenge the trial court’s fact findings regard-, ing Garg’s bad faith and fraud. They do not contest Thomas’s opinions about the “movie set” furniture which led the trial court to label the sale as a “bait and switch.”
To the extent that appellants’ arguments suggest that the Gandhis had to immediately understand the quality of the delivered items before payment of $150,000, we disagree. The defendants made a hurried, unannounced delivery. The finding that Garg preyed on the cultural and religious heritage of the Gandhis and the trust they placed in him was appropriately described in the trial court’s ruling with the adjectives abhorrent, outrageous, and oppressive. When Garg finally left their home after his sales rush, the Gandhis began to realize his deception. Therefore, from our review of the record, we affirm that Sonal’s contract of sale was subject to rescission under the redhibition principle of Article 2545 with remedies awarded by the trial court, including attorney fees.
*790 II.
Next, Garg argues that he cannot be personally liable as a “partner” of Sonal, a limited liability company (LLC).[4] In making this argument, Garg makes no assertions regarding the state law under which ' Sonal was formed. The petition alleges Sonal as a Georgia LLC. Garg makes no citation to any state’s LLC law, but only asserts the general limitations on liability, or the Incorporate shield principle, pertaining to corporate shareholders, LLC members or agents.[5]
Under our law, La. R.S. 12:1320 sets forth the law regarding liability of the members and managers of an LLC to third parties, as follows:
A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capaci'ty for a debt, obligation, or liability of the limited liability company.
C. A member, manager, employee, or agent of a limited liability company is nót a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person’s rights against or liability to the limited liability company.
D.Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or: agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.
The Louisiana Supreme Court in Ogea v. Merritt, 13-1085 (La.12/10/13), 130 So.3d 888, addressed the limited liability protection for members and managers of LLCs under La. R.S. 12:1320. Concerning the “negligent and wrongful act” exception of Section 1320(D), the court stated:
| ^Therefore, if a traditional tort has been committed against any cognizable victim(s), that situation weighs in favor of the “negligent or wrongful act” exception . and in favor of allowing the victim(s) to recover against the individual tortfeasor(s).
Ogea v. Merritt, supra at 901. The wrongful act in this. case is further addressed in Section 1320(D) as “fraud” by a member/actor of an LLC that falls outside of the corporate liability shield protection,
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage- for one party or to cause a loss or inconvenience to the other. La. C.C. art. *791 1953. Fraud need only be proved by a preponderance of the evidence and may be established by • circumstantial evidence. La. C.C. art. 1957. The party against whom ■ rescission . is granted because of fraud is liable for damages and attorney fees. La. C.C. art. 1958. Fraud may be predicated on promises made with the intention not to perform at the time the promise is made. The trial court’s^ findings with respect to a claim of fraud .are subject to the manifest error standard of review. Benton v. Clay, 48,245 (La.App.2d Cir.8/7/13), 123 So.3d 212.
The above Civil Code provisions on fraud pertain to conventional obligations and the vitiation of consent between the parties to a contract. Nevertheless, fraud may furnish a cause of action for damages as an intentional wrong under La. C.C. art. 2315. 1 William Crawford, Sales §12:21 at 250 in 12 Louisiana Civil Law Treatise (2d. ed.2009); see also, Revision Comments (C), La.- C.C. art. 1958. ■ Such tort can arise in a contract between a corporate entity. and the plaintiff when the 114actor/representative of the corporate entity intentionally conducts the ■ fraud against the plaintiff.
In light of the definition and review of fraud, the evidence indicates that Garg had both the intent to caüse a loss or inconvenience to the Gandhis and to obtain an unjust advantage for Sonal of which he benefitted as a member. While the rescission of the sale pertains to the contract between Sonal and the Gandhis, Gary’s participation in the fraud as a third party to the contract is an intentional tort making him personably liable in damages to the Gandhis.
III.
- From the broad' perspective, the trial court awarded $100,000 in mental anguish or nonpecuniary damages to the Gandhis. Nevertheless, the trial court segmented those damages. First, there was an award of $50,000 for mental anguish damages under Civil Code Article 1998[6] because the nature and object of the salé were intended to gratify certain religious interests of the Gandhis and Garg knew that his fraudulent conduct would aggrieve the feelings of thé Gandhis. Second, the egregious conduct of Garg was found to be a violation of LUTPA, and the threats and coercion Garg directed at the Gandhis in attempts to complete the transaction were remedied by an additional $50,000 award for mental anguish.
hfiOn appeal, appellants do not assign as error or challenge two significant aspects of these rulings regarding nonpecuniary damages. First, they do not dispute the award of $50,000 for nonpecuniary damages associated with the nature of the sale under Article 1998. According to Revision Comment (j) for Civil Code Article 2545, the redhibition remedies do not include nonpecuniary damages even in the case where the seller declares that the thing has a quality that he knows is untrue. The test for nonpecuniary damages remains Article 1998, upon which the trial court rests its initial $50,000 award for damages. Appellants do not challenge the factual or legal basis for that ruling. Second, neither of the $50,000 awards, which arose from separate factors for mental abuse, are challenged for their amounts or for quantum.
*792 The primary argument raised by appellants concerns the nonpecuniary damages awarded under LUTPA. They dispute that LUTPA was violated and that this award is a LUTPA remedy.
The LUTPA claim is set forth as follows:
A. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
La. R.S. 51:1405(A). Acts constituting unfair or deceptive trade practices are not specifically defined but are determined on a case-by-case basis. Johnson Const. Co. v. Shaffer, 46,999 (La.App.2d Cir.2/29/12), 87 So.3d 203; Tyler v. Rapid Cash LLC, 40,656 (La.App.2d Cir.5/17/06), 930 So.2d 1135. Only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned | abased on LUTPA. LUTPA does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes. Cheramie Services, Inc. v. Shell Deepwater Prod. Inc., 09-1633 (La.4/23/10), 35 So.3d 1053.
It has been held that recovery of general damages is ayailable under LUTPA. These include damages for, mental anguish and humiliation. Slayton v. Davis, 04-1652 (La.App. 3d Cir.5/11/05), 901 So.2d 1246; Laurents v. Louisiana Mobile Homes, Inc., 96-976 (La.App. 3d Cir.2/5/97), 689 So.2d 536; Vercher v. Ford Motor Co., 527 So.2d 995 (La.App. 3d Cir. 1988). A LUTPA violation also results in an award for attorney fees. La. R.S. 51:1409(A).
The most egregious aspect of Garg’s conduct stemmed from the trust he built with the Gandhis from his representations about their common Hindu beliefs. Dr. Gandhi testified that • Garg “started [a] binding family bond,” and began referring to Dr. Gandhi as his younger brother and to Mrs. Gandhi as his younger sister. Garg’s apparent spiritual and cultural like mindedness caused Dr, Gandhi to feel “comfortable” and to place his trust in Garg, This is in contrast to the great sham of the sales transaction visited upon the Gandhis by Garg. This violation of trust served as the basis of the trial court’s idling for fraud, misrepresentation, deception and unethical conduct, which our Supreme Court in Cheramie Services, supra, recognized as central to a LUTPA violation.
|17With the fraudulent relationship built by Garg, his criminal and professional charges against the Gandhis caused great mental anguish as recognized by the trial court’s award. As Garg’s conduct was tor-tious under our law for fraud and unethical by his twist and abuse of religious belief, nonpecuniary damages under LUTPA and our tort law were authorized.[7] We also find that these LUTPA damages inflicted by Garg for the economic benefit of Sonal were primarily employment related, making Sonal vicariously liable for Garg’s acts. Ermert v. Hartford Ins. Co., 559 So.2d 467 (La.1990); Johnson v. First Nat'l Bank of Shreveport, 00-870 (La.App.3d Cir.6/20/01), 792 So.2d 33, writs denied, 01-2770 (La.1/4/02), 805 So.2d 212, 01-2783 (La.1/4/02), 805 So.2d 213.
IV.
Garg also contests the admissibility of the 157 photographs submitted by the *793 plaintiffs into evidence on the grounds that they not only violated the court’s pretrial orders, but were also unreliable and. prejudicial.
The subject photographs, taken two weeks before trial, depict damage and/or places of repair to the furniture, substandard furniture and upholstery and drapery installation, including mismatched curtain tie backs. The defendants filed a motion in limine to exclude the photographs from evidence on the grounds that they were taken in the weeks before trial and' were first received by defendants on February 3, 2014, in violation of the trial court’s scheduling order. Prior to trial, the court considered the motion | isand allowed the photographs into evidence “subject to vigorous cross examination and identification.” Defense counsel lodged a continuing objection.
Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected. La. C.E. art. 103. The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed absent a clear abuse of that discretion. Politz v. Politz, 49,242 (La. App.2d Cir.9/10/14), 149 So.3d 805; Simmons v. Christus Schumpert Medical Ctr., 45,908 (La.App.2d Cir.6/15/11), 71 So.3d 407, writs denied, 11-1592 (La.10/7/11), 71 So.3d 317; 11-1591 (La.10/7/11), 71 So.3d 318; Graves v. Riverwood Int’l Corp., 41,-810 (La.App.2d Cir.1/31/07), 949 So.2d 576, writ denied, 07-0630 (La.5/4/07), 956 So.2d 621. On appeal, the court must consider whether the complained of ruling was erroneous and whether the error affected a substantial right of the party. If not, reversal is not warranted. Hays v. Christus Schumpert N. Louisiana, 46,408 (La. App.2d Cir.9/21/11), 72 So.3d 955. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. Id.
Likewise, the lower court is given broad discretion to determine whether or not to modify a pretrial order. Wilhite v. Thompson, 42,395 (La.App.2d Cir.8/15/07), 962 So.2d 493, writ denied, 07-2025 (La.2/15/08), 976 So.2d 175; Vernon v. Wade Correctional Inst., 26,053 (La. App.2d Cir.8/19/94), 642 So.2d 684. This discretion is controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have 119relied on the pretrial rulings or agreements and structured the preparation and presentation of their cases accordingly. Absent an abuse of discretion, the decision of the trier of fact will be upheld. Wilhite, supra.
In this matter, Thomas testified that all items depicted in the photographs submitted into evidence and listed in the final invoice were present in the home at the time of his initial inspection in 2013 and that no difference existed between the photographs and his personal inspection of the items. Mrs. Gandhi corroborated these conclusions upon her review of the photographs.
The trial court afforded the defendants unlimited cross-examination of the witnesses. Thus the defendants’ opportunity to reveal any inconsistencies in the witnesses’ testimony was protected. In these circumstances, the independent recollections of the witnesses at the time of the sale removed any arguable prejudice in this disputed photographic evidence. Thus, when compared to the full record, the photographs failed to have a significant effect on the outcome of the case. Accordingly we find no abuse of discretion in the trial court ruling.
*794 V.
Finally, appellants take issue with the judgment’s failure to require the Gandhis to return the furniture.
A buyer who obtains rescission because of a redhibitory defect is 'bound to return the thing to the seller, for which purpose he must take care of the thing as a prudent administrator, but is not' bound- to deliver it back until all his claims, or judgments, arising from the defect are satisfied. La. ImC.C. art. 2532, The Gandhis’ counsel at oral argument before the court conceded the applicability of Article -2532. Accordingly, the judgment is amended to. add this provision. .

Conclusion

For the foregoing reasons, the judgment of the of the trial court awarding damages, attorney fees and costs is affirmed. The judgment is amended to provide that upon payment of sums due under the original judgment of the trial court, the Gandhis are ordered to deliver the defective items to the defendants. Costs of this appeal are assessed to appellants.
JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.

. According to Dr. Gandhi, it was Shyam Garg’s personal affirmations of these facts as well as his promises to take care of the Gan-dhis which caused him to believe in and rely upon Garg.

. In his testimony, Garg identified the invoice . which was introduced into evidence by the Gandhis, However, Garg also introduced into evidence that same invoice containing handwritten notes. The trial court ultimately ruled that the invoice with the handwritten notes was not submitted to the Gandhis.

. The court rejected the individual liability of Gunter.

. ‘Sonal’s website indicated that Garg was the president of the LLC.

. Appellants have not alleged or proven that Georgia law applies. We recognize that- La. C.E. art. 202 requires the court to take judicial notice of the laws of every state of the United States. However, courts have continued to adhere to the judicial rule that when the parties do not offer proof of the other state’s law, the court may presume that law is the same as Louisiana. See, Verstichele v. Marriner, 04-354 (La.App. 3d Cir.9/29/04), 882 So.2d 1265; Edwards v. Dominick, 01-1245 (La.App. 5th Cir.3/26/02), 815 So.2d 236, Like Louisiana, Georgia's L.L.C. law allows piercing of the corporate veil when a member perpetrates fraud. OCGA § 14 — 11— 303; Bonner v. Brunson, 262 Ga.App. 521, 585 S.E.2d 917 (2003).

. Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss. Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee. La. C.C, art. 1998.

. As we have found that Garg was liable under La. C.C. art. 2315, his extreme and outrageous conduct, along with his knowledge that severe emotional distress would result from his abuse of religious belief, also allows for recovery for intentional infliction of emotional distress. White v. Monsanto Co., 585 So.2d 1205 (La. 1991).